WM. CAMERON CO., Inc., v. SANTIKOS. (No. 5803.)

(Court of Civil Appeals of Texas. Austin. May 11, 1917. Rehearing Denied June 13, 1917.)

1. JUSTICES OF THE PEACE ☞44(10)—"LIQUIDATED DEMAND"—WHAT CONSTITUTES.

Generally speaking, in order for a demand to be liquidated, one party must have obligated himself to pay the other a specific sum of money, either absolutely or upon the happening of a specified contingency.

[Ed. Note.—For other cases, see Justices of the Peace, Cent. Dig. §§ 170, 171.]

2. JUSTICES OF THE PEACE ☞44(10) — UNLIQUIDATED DEMAND—WHAT CONSTITUTES.

Where plaintiff agreed to furnish certain materials at a specified price, and later furnished a bill of extras without naming the price, the demand was unliquidated, and it was within the power of plaintiff, when the account as originally made showed a balance in excess of jurisdiction of the justice court, to remit the excess so as to confer jurisdiction so long as he did not separate the account so as to attempt to

recover the whole amount in two or more separate actions.

[Ed. Note.—For other cases, see Justices of the Peace, Cent. Dig. §§ 170, 171.]

Appeal from McLennan County Court; Geo. N. Denton, Judge.

Action by the Wm. Cameron Company, Incorporated, against L. Santikos. Judgment for defendant and order overruling motion for new trial, and plaintiff appeals. Reversed and remanded.

Sleeper, Boynton & Kendall, of Waco, for appellant. G. W. Barcus, of Waco, for appellee.

KEY, C. J. Wm. Cameron Company, as plaintiff, brought this suit against L. Santikos, as defendant, in a justice of the peace court. The suit was based upon a verified account for $199.95 for labor and material furnished by the plaintiff to the defendant in making certain improvements and repairs upon a building. The plaintiff filed a written petition, in which it was alleged that the plaintiff and defendant entered into a contract by which the plaintiff was to furnish the labor and material to paper and decorate the interior of a certain theater building for the defendant at an agreed price of $350, and that the plaintiff had performed its part of that contract. The plaintiff also alleged that during the time the building was being papered and decorated it was agreed between the parties that the plaintiff was to furnish material and perform certain other labor in reference to the building, an itemized statement of which was attached to the petition, and constitutes the verified account sued on. It was also alleged that such extra labor and material had been furnished, and that it was worth $149.95, the amount charged therefor in the account. It was further alleged that the defendant had paid to the plaintiff the sum of $300, which reduced his indebtedness to $199.95, the amount sued for. It was not alleged in the plaintiff's petition that the parties had agreed upon the amount to be paid for the extra labor and materials.

The defendant filed a written answer, in which, among other things, it was alleged that, after deducting the $300 paid by the defendant to the plaintiff, the plaintiff's books originally showed that the defendant owed the plaintiff $201.65, and that, in order to confer jurisdiction upon the justice court, the plaintiff, without any consideration, caused a credit to be entered upon its books, by which the balance due was made to appear as $199.95, by reason of which facts the defendant charged that the justice court was without jurisdiction. He interposed other pleas, one of which was that the original contract covered all that was done by the plaintiff, and that by the terms of that contract he was to pay to the plaintiff only the sum of $330, $300 of which had been paid. He also averred that, if there was no contract between him and plaintiff, the amount claimed by the plaintiff was exorbitant, and that the things furnished were not worth more than $300, and he filed a cross-action for damages for alleged defects in the work.

The justice court overruled the plea to its jurisdiction, and upon a trial of the case rendered judgment for the plaintiff, and the defendant appealed the case to the county court. In the latter court there was a jury trial, in which the court instructed the jury to return a verdict for the defendant on his plea of jurisdiction, which was done, and upon which verdict judgment was rendered for the defendant, and another judgment rendered overruling the plaintiff's motion for a new trial; and the latter has brought the case to this court for revision.

The assignments of error complain of the action of the court in directing the jury to find for the defendant on his plea in abatement, and of rulings permitting the defendant to prove by the plaintiff's general manager that he directed the plaintiff's bookkeeeper to enter a small credit upon the defendant's account, in order that the suit might be brought in a justice of the peace court.

The witness referred to testified that the extras for labor and material consisted of 13 items, which as entered upon the plaintiff's books aggregated $150.55, one item of which was "half gallon of varnish, $1.60." The witness testified that he caused the bookkeeper to enter a credit on the account of 60 cents for overcharge on the varnish, which credit resulted in reducing the total amount for extras to $149.95, and that his reason for doing so was that he learned that the defendant had sold his picture show in Waco, and was about to leave town without paying the balance due upon the account, and he desired to bring suit against the defendant in the justice of the peace court. The plaintiff's books showed that the half gallon of varnish was charged to the defendant on April 17, 1914, and that the credit referred to was entered on February 11, 1915. The suit was commenced in the justice court November 20, 1914, and in the account upon which the suit was based the half gallon of varnish was charged at $1, and that account did not show any credit for overcharge. The total amount of the charges in that account was $499.95, and the total amount of credits was $300, which left a balance of $199.95. The case was tried in the justice court March 6, 1915, and in the county court May 19, 1916.

In the case of Fuller v. Sparks, 39 Tex. 137, the Supreme Court used this language:

"A merchant has no right, under any circumstances, to divide his book or store account into two parts, so as to bring either within the jurisdiction of a justice of the peace, and then bring a suit on each. This would be a fraud upon the jurisdiction of that court, which would not be tolerated. But a party who has an account against another, which exceeds the jurisdiction of a justice's court, may receipt that account, if he chooses, for all that exceeds that jurisdiction, and bring one suit on the balance

due; and this was, in effect, what was done in the case which was the origin of this suit."

In Burke v. Adoue, 3 Tex. Civ. App. 494, 22 S. W. 824, 23 S. W. 91, the Court of Civil Appeals at Galveston held that, where the amount claimed to be due in a suit on a note with 10 per cent. attorney's fee, as provided by the note, is beyond the jurisdiction of the court, the plaintiff cannot, while setting up a claim for attorney's fee, reduce it in amount to bring the action within the jurisdiction of the court. That case is cited and relied upon by the attorneys on each side of this case. Counsel for appellee contends that it points out, which may be true, that the language quoted above and used by the Supreme Court in that case was obiter dictum, as the judgment in that case was being attacked collaterally. Counsel for appellant rely upon it as pointing out the distinction between suits where the amount recoverable is liquidated and where such amount is unliquidated. In that case the suit was based upon a promissory note for a specified sum of money, and for 10 per cent. attorney's fee, and the court treated both of those items as liquidated, and held that the plaintiff could not remit part of the attorney's fee, though he could have remitted all of it, for the purpose of bringing the case within the jurisdiction of the court. Mr. Justice Williams, who wrote the opinion in that case, points out clearly the distinction between liquidated and unliquidated demands, as bearing upon the question of jurisdiction, and in the course of the opinion he used the following language:

"When unliquidated damages are sued for, there is no way in which the amount of the subject-matter in controversy is to be determined in advance of a trial, except by the allegations made by the plaintiff; and this, of necessity, puts it in his power to determine the question of jurisdiction. * * * But when the objection is made in the original suit, by the defendant, asserting his right to have his cause heard in the proper forum, and when it appears that a cause of action for a fixed and liquidated sum has been reduced in order to confer jurisdiction, the right of the defendant to have his cause tried in the forum established by law should be respected."

A standard authority treats the subject in these words:

"As a general rule a plaintiff may, in order to bring his claim within the jurisdiction of a justice of the peace, remit or abandon a part thereof, or the interest thereon, and where the sum demanded is within, it is immaterial that the evidence shows an indebtedness beyond, the jurisdiction. Where in replevin the property exceeds in value the jurisdiction of the justice, a part thereof can be released from the levy and the jurisdiction of the justice sustained; but where the property is indivisible and the value exceeds the jurisdiction, the want of jurisdiction cannot be cured by remitting any excess in value." 24 Cyc. p. 474.

And the latest decisions of the Supreme Court of this state seem to be in accord with the doctrine announced in the foregoing quotation. Railway Co. v. Rayzor, 106 Tex. 544, 172 S. W. 1103; Railway Co. v. Mathews (Sup.) 191 S. W. 559.

[1, 2] In the case at bar the account as entered upon the plaintiff's books did not constitute a liquidated demand, and if the account sued upon was liquidated because of the fact that it was sworn to in such manner as to render it prima facie evidence, that fact does not aid the defendant, because that account shows a balance due of only $199.95, which was within the jurisdiction of the justice of the peace. Generally speaking, and with but few exceptions, in order for a demand to be liquidated, it must appear that the defendant has obligated himself to pay to the plaintiff a specific sum of money, either absolutely or upon the happening of a specified contingency; and no such proof was made in this case. On the contrary, the undisputed proof was that there was no agreement whatever as to the amount to be paid for the different items of material and the labor not covered by the original contract, but embraced within the second contract for extra work and material. Therefore the entries made by the plaintiff upon its books by which the defendant was charged in the aggregate with $150.55 for such extras did not constitute a liquidated demand, and the plaintiff had the right, if it saw proper to do so, to reduce the amount it had charged against the defendant for any item in that account, although such reduction may have been made for the express purpose of enabling the plaintiff to sue the defendant in a justice of the peace court.

In this case the plaintiff changed the amount originally charged against the defendant for a half gallon of varnish, but it did not split, divide, or change the items charged in the account. So it will be seen that the judgment rendered in the case will constitute a bar and estop the plaintiff from maintaining another suit against the defendant for any part of the account.

In so far as jurisdiction is concerned, such unliquidated claims are analogous to a claim for damages resulting from a tort, in which the question of jurisdiction is to be determined by the amount of damages alleged and sought to be recovered by the plaintiff. Western Union Tel. Co. v. Durham, 17 Tex. Civ. App. 310, 42 S. W. 792; Ball v. Hines, 61 S. W. 332; Times Pub. Co. v. Hill, 36 Tex. Civ. App. 389, 81 S. W. 806.

Hence we conclude that appellant's assignments of error should be sustained, and the judgment of the trial court reversed, and the cause remanded; and it is so ordered.

Reversed and remanded.